IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRANCISCO E. RUBIO. Jr.,

    Petitioner,                  2: 05 - cv - 1440 GEB TJB

    vs.

RICHARD J. KIRKLAND, et al.,

    Respondents.             FINDINGS AND RECOMMENDATIONS

## I.  INTRODUCTION

Petitioner, Francisco E. Rubio, Jr., is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner is currently serving a sentence of eighteen years to life imprisonment following his conviction for second degree murder and auto theft after he pled guilty. While Petitioner lists three claims in his habeas petition, they are all interrelated and center around one issue. Specifically, Petitioner asserts that his plea was not voluntary/intelligent. He asserts that a co-defendant's testimony at the trial of another co-defendant contradicted her earlier statements to law enforcement that Petitioner bound the victim at or near the time the victim was killed. Petitioner asserts that the co-defendant's trial testimony constituted new evidence and that the trial court erred in denying his motion to withdraw his plea. For the following reasons, it is recommended that Petitioner's habeas petition be denied.

//

## II. FACTUAL BACKGROUND[1]

In late March or early April 1998, defendant, Paul Smith, Lori Smith, Amy S., and Lora Sinner (victim) were living in two tents at a campsite in Shasta County. Paul and Amy were boyfriend and girlfriend, as were defendant and Lori. The two couples slept in one tent, while the victim slept in the second tent.

In the days prior to the murder, the couples discussed killing the victim because they were irritated about her perceived flirtations with defendant and Paul; they felt she knew too much about their involvement in some thefts; and they wanted her car and money. On the day of the murder, Amy started an argument with the victim and hit and kicked her. Lori joined in and slammed the victim's head against a tree and rock. At Lori's behest, Amy grabbed a large can of chili and hit the victim repeatedly on the head with it. Amy and Lori then pummeled the victim's head with a large metal rod. Lori, Amy and Paul took the victim to a nearby creek to clean her up. Then they returned to the campsite, defendant made a noose and handed it to Paul.

Paul bound the victim's hands and feet while defendant placed the noose around her neck. Paul then "hog-tied" her with the rope from her neck to her feet. The victim pleaded for her life. Paul cut the victim's wrists, poured whiskey over them, and held her hands over a campfire in order to accelerate the bleeding. Thereafter Paul and Lori continued to beat the victim, and Paul put two plastic bags over her head to suffocate her and muffle the sound of her gasping. Paul brought the victim's ordeal to an end by striking the back of her head with the metal rod.

Paul and defendant dragged the victim a short distance, dug a shallow grave, stripped and buried her, made a fire on top of the grave, and burned her belongings.

The two couples continued to live at the campsite for 10 days to two weeks. Defendant was arrested on April 10, 1998, after he was observed as a passenger in a stolen vehicle and admitted driving it.

(Slip Op. at p. 1-3 (footnote omitted).)

## III. PROCEDURAL HISTORY

In July 1998, defendant and the Smiths were charged by information with murder, conspiracy to commit murder, and false

---

[1] The factual background is taken from the California Court of Appeal, Third Appellate District opinion dated October 29, 2004, and filed in this Court by Respondents on October 17, 2007 as lodged document 5 (hereinafter "Slip Op.").

2

> imprisonment by violence. The information also alleged special circumstances of lying in wait. Amy was similarly charged in juvenile court.
>
> Defendant entered into a negotiated disposition through a written plea agreement in July 1999, by which he pleaded guilty to second degree murder and admitted a special allegation of infliction of great bodily injury, use of a deadly weapon, lying in wait, and torture. Defendant also pleaded guilty to unlawful driving or taking of a vehicle in a different case. The plea agreement was conditioned upon defendant's truthful testimony in all court matters involving the codefendnats, as well as cooperating with the prosecution and law enforcement regarding the investigation and preparation of the case. If defendant performed as promised, he would receive an indeterminate sentence of 15 years to life on the second degree murder charge with the allegation of infliction of great bodily injury, a consecutive three-year term on the auto theft charge, and the remaining special circumstances and enhancements would be dismissed. If defendant failed to cooperate, his pleas and admissions would remain in effect and the trial court would be authorized to impose full punishment therefor.
>
> On September 30, 1999, defendant moved to withdraw his pleas and admissions on the basis that his pleas were not knowingly or intelligently entered. The court denied the motion on October 22, 1999.

(Slip Op. at p. 3-4 (internal citations omitted).) Subsequently, Petitioner filed a state habeas petition in the Shasta County Superior Court on December 6, 2001 alleging that "[u]pon entering a guilty plea, I was not fully aware of the full impact of the plea agreement. I was also not aware of the status of my co-defendants plea status." (Resp'ts' Lodged Doc. 3 at p. 4.) The Shasta County Superior Court denied the habeas petition on December 14, 2001. Petitioner then filed a state habeas petition with the California Court of Appeal, Third Appellate District raising the same claim that he did in his December 6, 2001 state habeas petition in the Shasta County Superior Court. The California Court of Appeal denied the habeas petition on February 7, 2002.

> For her participation in the murder, Amy was committed to the California Youth Authority with a maximum term of confinement of life plus two years and eight months. Lori pleaded guilty to first degree murder and admitted the allegation of infliction of great bodily injury in exchange for a sentence of 25 years to life in state prison. The case against Paul went to trial and resulted in a judgment of death.

3

> In August 2002, defendant testified at Paul's trial and admitted making the noose and handing it to Paul. Defendant also testified, under cross-examination by Paul's attorney, that he (defendant) was not guilty of murder or any of the related allegations, and that he had entered the plea bargain because he felt guilty about hearing the others talk about murdering the victim and for helping to bury her body. Lori testified that defendant helped tie the victim up and that he placed the noose around her neck. On cross-examination by Paul's attorney, though, Lori testified she had lied to investigators when she told them that defendant had helped tie the victim's feet.
>
> On June 23, 2003, defendant moved to withdraw his pleas and admissions, this time on the basis of new evidence, consisting of his own and Lori's testimony at Paul's trial. The court denied the motion on July 7, 2003 and on July 17, 2003, sentenced defendant in accordance with the plea agreement. The court granted defendant's request for issuance of a certificate of probable cause.

(Slip Op. at p. 4-5.) On appeal to the California Court of Appeal, Petitioner argued that the trial court erred by refusing to withdraw his guilty plea based on newly discovered evidence. On October 29, 2004, the California Court of Appeal affirmed the judgment in a written opinion. The California Supreme Court summarily denied the petition for review.

## IV.  APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

An application for writ of habeas corpus by a person in custody under judgment of a state court can only be granted for violations of the Constitution or laws of the United States. See 28 U.S.C. § 2254(a); see also Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)). Petitioner filed this petition for writ of habeas corpus after April 24, 1996, thus the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies. See Lindh v. Murphy, 521 U.S. 320, 326 (1997). Under AEDPA, federal habeas corpus relief is not available for any claim decided on the merits in the state court proceedings unless the state court's adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the

1  evidence presented in state court.  See 28 U.S.C. 2254(d).

2      If a state court's decision does not meet the criteria set forth in § 2254(d), a reviewing
3  court must conduct a *de novo* review of a petitioner's habeas claims.  See Delgadillo v.
4  Woodford, 527 F.3d 919, 925 (9th Cir. 2008).  Additionally, where a state court provides no
5  reasoning to support its conclusion, a federal habeas court independently reviews the record to
6  determine whether the state court was objectively unreasonable in its application of clearly
7  established federal law.  See Musladin v. Lamarque, 555 F.3d 830, 835 (9th Cir. 2009); see also
8  Delgado v. Lewis, 223 F.3d 976, 981-82 (9th Cir. 2000), overruled on other grounds, Lockyer v.
9  Andrande, 538 U.S. 63. (2003).

10      As a threshold matter, this Court must "first decide what constitutes 'clearly established
11  Federal law, as determined by the Supreme Court of the United States.'"  Lockyer, 538 U.S. at
12  71 (2003) (quoting 28 U.S.C. § 2254(d)(1)).  "'[C]learly established federal law' under §
13  2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the
14  time the state court renders its decision.'"  Id. (citations omitted).  Under the unreasonable
15  application clause, a federal habeas court making the unreasonable application inquiry should ask
16  whether the state court's application of clearly established federal law was "objectively
17  unreasonable."  See Williams v. Taylor, 529 U.S. 362, 409 (2000).  Thus, "a federal court may
18  not issue the writ simply because the court concludes in its independent judgment that the
19  relevant state court decision applied clearly established federal law erroneously or incorrectly.
20  Rather, that application must also be unreasonable."  Id. at 411.  Although only Supreme Court
21  law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in
22  determining whether a state court decision is an objectively unreasonable application of clearly
23  established federal law.  See Clark v. Murphy, 331 F.3d 1062, 1072 (9th Cir. 2003) ("While only
24  the Supreme Court's precedents are binding . . . and only those precedents need be reasonably
25  applied, we may look for guidance to circuit precedents.").

26      The first step in applying AEDPA's standards is to "identify the state court decision that

is appropriate for our review." See Barker v. Fleming, 423 F.3d 1085, 1091 (9th Cir. 2005). When more than one court adjudicated Petitioner's claims, a federal habeas court analyzes the last reasoned decision. Id. (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)). The last reasoned state court decision in this case was from the October 29, 2004 California Court of Appeal opinion.

## V.  ANALYSIS OF PETITIONER'S CLAIMS

As previously noted, Petitioner raises several claims in his petition, but they are all interrelated. For example, in claim I, Petitioner asserts that his guilty plea was not voluntary because Lori's testimony at Paul's trial differed from what she had told investigators in that she testified at trial that Petitioner did not bind the victim. In claim II, Petitioner asserts that Lori's testimony at trial constitutes "new evidence." Finally, in claim III, Petitioner asserts that the trial court erred in denying his 2003 motion to withdraw his guilty plea due to this purported "new evidence." As these interrelated claims illustrate, Petitioner's federal habeas petition questions the correctness of the trial court's denial of his 2003 motion to withdraw his guilty plea in light of Lori's testimony at Paul's trial. The California Court of Appeal analyzed this issue in its 2004 opinion and stated the following:

> Defendant argues the trial court abused its discretion in denying his motion to withdraw his plea because of his mistaken belief, at the time he entered his plea, that Lori would testify that he tied the victim's hands and feet together. In defendant's view, if he had been aware that Lori would have testified only that he tied the victim's hands, he would not have entered his plea. In addition, defendant relies on his testimony at Paul's trial that he did not exercise clear judgment when entering his pleas and admissions.
>
> Section 1018 [of the California Penal Code] provides in relevant part: "On application of the defendant at any time before judgment . . . , the court may . . . for a good cause shown, permit the plea of guilty [or no contest] to be withdrawn and a plea of not guilty substituted . . . . This section shall be liberally construed to effect these objects and to promote justice." "To establish good cause, it must be shown that defendant was operating under mistake, ignorance, or any other factor overcoming the exercise of his free judgment." (People v. Huricks (1995) 32 Cal.App.4th 1201, 1208.) "A decision to deny a motion to withdraw a guilty plea

6

"'rests in the sound discretion of the trial court'" and is final unless the defendant can show a clear abuse of that discretion." (People v. Fairbank (1997) 16 Cal.4th 1223, 1254.)

Applying this standard of review, we find defendant's argument wholly unconvincing. Prior to entry of his plea, defendant was aware that Lori had told law enforcement that defendant had helped to tie up the victim's hands and feet and had fashioned the noose that was put around the victim's neck. At Paul's trial, defendant testified that Paul told him to get a rope and make a noose. At the same trial, Lori testified that defendant helped tie the victim up and put a noose around the victim's neck. In response to leading questions on cross-examination, though, Lori gave a slightly different version of the facts, testifying that she lied to investigators when she told them that defendant had tied the victim's feet.

Defendant's "mistake" about the substance of Lori's testimony is not the type of mistake that constitutes good cause for withdrawal of a guilty or no contest plea. To establish good cause to withdraw such a plea, the defendant must show that the mistake or other factor upon which he relies "over[came] the exercise of his free judgment" (Huricks, supra, 32 Cal.App.4th at p. 1208) in deciding to enter the plea. Here, defendant fails to explain how the minor discrepancy in Lori's testimony overcame the exercise of his free judgment in deciding to plead guilty and admit the special allegations.

Defendant's argument is similar to one rejected in People v. Watts (1977)) 67 Cal.App.3d 173, where the trial court denied the defendant's motion to withdraw his guilty plea to a charge of second degree murder. On appeal, Watts contended "he should have been permitted to withdraw his guilty plea inasmuch as he was operating under a mistake of fact at the time he entered into the bargain." (Id. at p. 183.) Watts contended that when he entered his guilty plea, he assumed one of his codefendants (Fontaine) would implicate him if the case went to trial. However, at the trial of another codefendant, Fontaine did *not* implicate Watts. Based on his "mistake" in "overestimat[ing] the strength of the state's case against him" (by assuming Fontaine's testimony would implicate him) (ibid.), Watts contended he should have been allowed to withdraw his plea. The appellate court rejected this contention out of hand, stating: "This is hardly the type of mistake, ignorance or inadvertence which would permit the withdrawal of a guilty plea." (Ibid.)

Here, defendant made a similar "mistake" by assuming that Lori would testify in accordance with her statements and admissions to investigating officers. Like the "mistake" of the defendant in Watts, supra, 67 Cal.App.3d at page 183, this is not the type of mistake that would permit the withdrawal of a guilty plea because

> defendant has failed to show how his "mistake" in evaluating the evidence against him overcame the free exercise of his judgment in deciding to plead as he did. The evidence available to defendant before he entered his plea was, with minor variations, no different than the evidence adduced at Paul's trial. Lori testified that defendant made the noose and put it around the victim's neck and that he helped to tie up the victim. This testimony was consistent with statements Lori had made to law enforcement before defendant's plea. The only discrepancy would appear to be Lori's claim that, in response to leading questions by Paul's attorney, she had lied about defendant tying up the victim. The inconsistency in Lori's trial testimony mirrored the inconsistencies in her statements to investigators prior to defendant's plea. This inconsistency does not warrant setting aside defendant's pleas and admissions. . . .
>
> It has been noted that "'[o]ften the decision to plead guilty is heavily influenced by the defendant's appraisal of the prosecution's case against him . . . .'" (People v. Hunt (1985) 174 Cal.App.3d 95, 103, quoting Brady v. United States (1970) 397 U.S. 742, 756-57 [25 L.ed.2d 747, 761].) A similar observation could be made about a defendant's appraisal of his own defense. "'Considerations like these frequently present imponderable questions for which there are no certain answers; judgments may be made that in the light of later events seem improvident, although they were perfectly sensible at the time. The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering his decision.'" (Ibid.)
>
> Because defendant failed to show that he was operating under mistake or ignorance that overcame the exercise of his free judgment in pleading guilty and admitting the special allegations, the trial court did not abuse its discretion in denying his motion to withdraw his plea.

(Slip Op. at p. 5-10.)

A guilty plea must be knowing, intelligent and voluntary. See Brady v. United States, 397 U.S. 742, 748 (1970); Boykin v. Alabama, 395 U.S. 238, 242 (1969). "The voluntariness of [a petitioner's] plea can be determined only by considering all of the relevant circumstances surrounding it." Brady, 397 U.S. at 749 (citations omitted). In Blackledge v. Allison, 431 U.S. 63 (1977), the Supreme Court addressed the presumption of verity to be given the record of a plea proceeding when the plea is subsequently subject to a collateral challenge. While noting that the a petitioner's representations at the time of his guilty pleas are not "invariably

8

insurmountable" when challenging the voluntariness of the plea, the Supreme Court recognized that the petitioner's representations, as well as any findings made by the judge accepting the plea, "constitute a formidable barrier in any subsequent collateral proceedings" and that "[s]olemn declarations in open court carry a strong presumption of verity." Id. at 74.

In Boykin, the Court held that the record must affirmatively reflect that the petitioner's guilty plea is intelligent and voluntary. 395 U.S. at 242-43. In that case, the judge taking the plea had asked no questions of the petitioner concerning his guilty plea and the petitioner had not addressed the court. The Court concluded that the record must reflect that a criminal defendant pleading guilty understands, and is voluntarily waiving his constitutional rights to the privilege against compulsory self-incrimination, to trial by jury and to confront one's accusers and that the court would not presume such a waiver from a silent record. See id. at 243. In Brady, the Supreme Court stated that "the new element added in Boykin was the requirement that the record must affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily." Brady, 397 U.S. at 747 n.4. Furthermore, a specific articulation of the Boykin rights "is not the sine qua non of a valid guilty plea." Wilkins v. Erickson, 505 F.2d 761, 763 (9th Cir. 1974). Accordingly, if the record demonstrates that a guilty plea is knowing and voluntary, "no particular ritual or showing on the record is required." United States v. McWilliams, 730 F.2d 1218, 1223 (9th Cir. 1984) (opinion of Schroeder, J.) (citations omitted).

The record in this case reflects that Petitioner's plea was freely and voluntarily made, with knowledge of the consequences of his plea. The trial court engaged in an adequate colloquy with Petitioner at the time he entered his plea. (See Reporter's Tr. at p. 9-23.) For example, the trial judge asked Petitioner if he understood the plea form that he had completed and signed and if he had spoken to counsel about the form. (Id. at p. 9-10.) The judge then went through the charges with Petitioner, and asked for his plea. (Id. at p. 20- 23.) Petitioner initialed and signed the written plea form that explained in detail the terms of the plea agreement and the constitutional rights he was giving up by entering his guilty plea. (See Clerk's Tr. at p. 268-79.)

Petitioner initialed the boxes that expressly represented that in entering his guilty plea he understood he was giving up the following rights:

> 1. The right to have an attorney represent me at all stages of this proceeding and the right to have an attorney appointed to represent me if I cannot hire one on my own.
> 2. The right to a speedy and public trial by jury . . .
> 3. The right to see, hear, and cross-examine all witnesses against me.
> 4. The right to have the judge order into court all the evidence and to order my witnesses to attend the trial or hearing without cost to me.
> 5. The right to testify and to present evidence in my favor.
> 6. The right to remain silent.

(Id. at p. 270.)  Petitioner's trial counsel also signed the form and attested to the fact that she "explained each of the rights to the defendant."  (Id. at p. 271.)  Finally, the trial judge also signed the form which stated that:

> The court finds the defendant fully understands his constitutional rights, the nature of the crimes charges and those to which the defendant is pleading the consequences of the plea; the defendant knowingly, intelligently, and voluntarily is waiving those constitutional rights and is freely and voluntarily entering this plea; and, there is a factual basis for a finding the defendant is guilty of the charges to which the defendant pleaded.

(Id. at p. 272.)

In this case, the record reflects that Petitioner made a voluntary and intelligent choice to plead guilty to the charges against him.  He voluntarily waived his rights to a jury trial, to confront his witnesses and his right against self-incrimination.  See Boykin, 395 U.S. at 243.  Petitioner had notice of the nature of the charges against him as well.  See Marshall v. Loneberger, 459 U.S. 422, 436 (1983).  Petitioner asserts that because Lori's testimony at Paul's trial differed somewhat from what she had told investigators about Petitioner's role in the murder before Paul's trial this somehow made his guilty plea unintelligent and not voluntary.  In Brady, the Supreme Court stated the following:

> Often the decision to plead guilty is heavily influenced by the defendant's appraisal of the prosecution's case against him and by the apparent likelihood of securing leniency should a guilty plea be

> offered and accepted. Considerations like these frequently present imponderable questions for which there are no certain answers; judgments may be made that in light of later events seem improvident, although they were perfectly sensible at the time. The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision. A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case.

397 U.S. at 756-57. The Supreme Court continued by explaining that, "[w]e find no requirement in the Constitution that a defendant must be permitted to disown his solemn admissions in open court that he committed the act with which he is charge simply because it later develops that the State would have had a weaker case than the defendant had thought." Id. at 757. Thus, the mere fact that Petitioner purportedly misapprehended a small portion of the testimony that Lori would have given at his trial does not mean that Petitioner is entitled to federal habeas relief on his claim that his plea was not intelligent and voluntary and that he should have been allowed to withdraw his plea. During the colloquy with the trial judge, the Petitioner stated that there were no threats making him agree to the plea agreement and that he was not under the influence of anything clouding his judgment or distorting his view. (See Reporter's Tr. at p. 19.) For the foregoing reasons, Petitioner is not entitled to federal habeas relief. He has failed to show that the purported slight discrepancy in Lori's statements to investigators as compared to her testimony during Paul's trial made Petitioner's guilty plea unintelligent and unknowing and that the trial court should have allowed him to withdraw his plea.

## VI. CONCLUSION

IT IS HEREBY RECOMMENDED that Petitioner's Petition for writ of habeas corpus be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within seven days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).  In any objections he elects to file, petitioner may address whether a certificate of appealability should issue in the event he elects to file an appeal from the judgment in this case.  *See* Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED: November 1, 2010

_____
TIMOTHY J BOMMER
UNITED STATES MAGISTRATE JUDGE